**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NIA SHENE' LUCAS,<br><br>Plaintiff,<br><br>v.<br><br>KELLY LOEFFLER<br>Administrator, U.S. Small Business,<br><br>Defendant. | ) | Civil Action No. 23-3535 (ABJ) |

**MEMORANDUM OPINION**

Plaintiff Nia Lucas brings this action against Kelly Loeffler,[1] the Administrator of the Small Business Association ("SBA"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*.; and the Privacy Act, 5 U.S.C. § 552a. *See* Compl. [Dkt. # 1]; 2d. Am. Compl. [Dkt. #25]. Plaintiff has filed multiple other lawsuits against the SBA relating to her employment at the agency, and the Court has already ruled on numerous motions in those actions. *See Lucas v. Loeffler*, No. 21-296, 2026 WL 1998749 (D.D.C. July 10, 2026) ("*Lucas I*") (granting defendant's motion for summary judgment and denying plaintiff's partial motion for summary judgment); *Lucas v. Loeffler*, No. 22-2101, 2024 WL 4650944 (D.D.C. Nov. 1, 2024) ("*Lucas II*") (denying motion for leave to amend complaint and granting motion to dismiss); *Lucas v. Loeffler*, No. 24-817, 2026 WL 799604 (D.D.C. Mar. 23, 2026) ("*Lucas IV*")

1 The suit was originally brought against Isabel Guzman, the previous SBA Administrator, and Loeffler has been substituted as defendant pursuant to Federal Rule of Civil Procedure 25.

(granting motion to dismiss). Plaintiff has also sued her union and her former lawyer in related lawsuits. *See Lucas v. Dhali*, No. 24-685, 2025 WL 3771999 (D.D.C. May 29, 2025); *Lucas v. AFGE*, No. 22-777; and *Lucas v. AFGE*, No. 22-1540.

Many of the allegations in the complaint before the Court in this case have formed the basis of claims in the related lawsuits, which brought claims of discrimination and retaliation under Title VII and the Fair Labor Standards Act, as well as breach of contract claims. This time, plaintiff has packaged the allegations as a broad retaliation case. Plaintiff claims that the SBA engaged in a "campaign of retaliation" against her after she entered into a settlement agreement with the agency in March 2020 ("Settlement Agreement") by later breaching that agreement, interfering with her disability and worker's compensation benefits, mishandling her medical information, and violating her privacy rights. *See* 2d. Am. Compl. [Dkt. # 25] at 1–2. Plaintiff seeks $5,000,000 in damages and injunctive relief. 2d Am. Compl. ¶¶ 212–215.

Plaintiff has amended her complaint twice. *See* Am. Compl. [Dkt. # 11]; 2d Am. Compl. On June 24, 2025, the SBA filed a motion to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state claim upon which relief can be granted. Def.'s Mot. to Dismiss and Mem. in Supp. [Dkt. # 28] ("Def.'s Mot."). The motion is fully briefed. Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 30] ("Pl.'s Opp."); Def.'s Reply in Supp. of Mot. to Dismiss [Dkt. # 32] ("Def.'s Reply"). For the reasons set forth below, the motion to dismiss will be granted.

**BACKGROUND**

Plaintiff Nia Lucas was employed with the SBA from 2017 to 2020. 2d Am. Compl. ¶ 1. During her employment, plaintiff filed a series of internal complaints claiming that she was discriminated against on the basis of her gender, race, and disability, and that she was retaliated against for engaging in protected activity. *See, e.g.*, *id*. ¶ 6 (alleging that plaintiff filed an internal

complaint that she had been denied reasonable accommodations for her disability in June 2017); *id.* ¶ 8 (alleging that she filed an internal EEO complaint in October 2017 that "alleg[ed] disability, race, and gender discrimination, as well as harassment . . . and retaliation); *id.* ¶ 10 (alleging she "filed a complaint through the SBA's negotiated grievance process, asserting similar . . . Title VII" and Rehabilitation Act claims); *id.* ¶¶ 22–29 (alleging that two Notices of Proposed Removal, which were ultimately withdrawn, were issued in retaliation for her protected activities).

Plaintiff alleges that, on March 4, 2019, she experienced a workplace injury. 2d Am. Compl. ¶ 35. She asserts that on that date, she was assaulted and prevented from entering her workplace, and that the "stress and trauma" from this incident exacerbated her post-traumatic stress disorder ("PTSD") and led her to seek medical treatment. *Id.* ¶ 36. Plaintiff filed another EEO complaint about this incident, sought worker's compensation, and claimed that the SBA was withholding leave and related pay. *Id.* ¶ 36–42.

On March 5, 2020, plaintiff and the SBA entered into the Settlement Agreement that released "all claims contained within any of the matters or forums [related to plaintiff's EEO complaints and union grievances]" and "any and all other claims, demands, rights or causes of action, however designated . . . whether known or unknown, pending or not now pending, contingent or fixed, that Complainant has had, now has or hereafter may have against the [Small Business Administration] and its officials, employees, officers, agents, and representatives as of the date of this Agreement." Settlement Agreement, Ex. 4 to 2d Am. Compl. [Dkt. # 25-2] ¶ 11; *see also* Settlement Agreement ¶ 6 (agreeing to dismiss all claims already brought as EEO claims or union grievances).

In exchange for the release of claims, the SBA agreed that it would:

- "pay a lump sum payment in the amount of eighty thousand dollars ($80,000.00) . . . to Nia Lucas," Settlement Agreement ¶ 1;

- "waive the requirement that Complainant repay any negative sick leave balance or negative annual leave balance," Settlement Agreement ¶ 2;

- "convert six hundred and thirty-one (631) hours of Complainant's time recorded as leave without pay . . . to paid on-duty Administrative Leave," and to provide her with "backpay for the hours converted," Settlement Agreement ¶ 3;

- not "appeal or dispute the Department of Labor's November 19, 2019 decision to accept Complainant's claims for Post-Traumatic Stress Disorder (PTSD) injury," and to process all forms and documents related to her Federal Employees' Compensation Act claim expeditiously, Settlement Agreement ¶ 4;

- "remove Complainant for Medical Inability to Perform," Settlement Agreement ¶ 5; and

- "reverse Complainant's charge of Absent Without Leave . . . dated December 5, 2017," and provide her with backpay for the hours reversed, Settlement Agreement ¶ 7.

In return, plaintiff agreed to leave federal service due to her medical inability to perform her duties. Settlement Agreement ¶ 5. Plaintiff was represented by a lawyer when she negotiated and executed the Settlement Agreement. *Id.* at 10.

Plaintiff now complains that the Settlement Agreement was "a fraudulent scheme" that "constructively discharge[d] her." 2d Am. Compl. ¶ 48. She also alleges that the SBA breached the Settlement Agreement because she was not paid certain benefits to which she believes she was entitled. *Id.* ¶¶ 49–52. To support these allegations, she points to a series of letters that the SBA exchanged with other federal agencies regarding her benefits:

- A November 19, 2019 letter from DOL to plaintiff, providing a "Notice of Decision" that DOL is vacating the prior denial of plaintiff's worker's compensation benefits. *See* Ex. 10 to 2d Am. Compl., [Dkt. # 25-2] at 19–30.

- In June 2021 letter, the SBA "falsely reported to the [Department of Labor] that plaintiff's PTSD was "service-connected" by the Department of Veterans Affairs . . . rather than work-related,

attempting to disqualify her from receiving [workers compensation] benefits. 2d Am. Compl. ¶ 69–72; 102–103; 108.[2]

- In a January 31, 2022 letter from the SBA to the Department of Labor, a medical case manager within the SBA's CARE Unit requested that plaintiff "be referred for an updated Psychiatric Second Opinion (SECOP) with formal psychometric and cognitive testing to provide the current clinical status of the accepted conditions, the work-relatedness of current symptoms, additional treatment needed, and current work capacity." Letter from Linda Lanier, RN, Medical Case Manager, CARE Unit, Small Bus. Admin., to Claims Examiner, U.S. Dep't of Labor (Jan. 31, 2022); Ex. 6 to 2d Am. Compl. [Dkt. # 27-3] at 1–5 ("2022 Second Opinion Letter"). The letter was accompanied by a report of a physician's review of plaintiff's file. It set forth his medical opinion and noted that plaintiff "was diagnosed with Post Traumatic Stress Disorder (PTSD) by the Department of Veterans Affairs," and that this "diagnosis usually results in an automatic, set disability rating and disability compensation." *Id.* at 4. The reviewing physician therefore recommended that the claims examiner ensure there was no overpayment for the same condition. *Id.*

- A September 19, 2022 letter from DOL to the SBA, in which a representative from the Federal Employees Program states that plaintiff "has an accepted workers' compensation claim for which her compensation is payable" and that "she is entitled to be paid [Continuation of Payment 'COP'"]. Ex. 8 to 2d Am. Compl. [Dkt. # 25-2] at 11–12.

- An August 23, 2024 letter from the SBA to the Department of Labor ("DOL"), in which the SBA requested an "updated" second opinion "[a]s part of our case management program." Ex. 11 to 2d Am. Compl. [Dkt. # 25-4] at 1–7 ("2024 Second Opinion Letter").

Plaintiff contends that the SBA's requests related to her worker's compensation benefits were "unlawful medical related inquiries" because plaintiff was barred from returning to work under the Settlement Agreement. *See, e.g.*, 2d Am. Compl. ¶¶ 115–126.

---

2 The Court notes that this letter was not included as an exhibit to the second amended complaint.

**Plaintiff Filed *Lucas I*, Alleging an Unpaid Wages Claim and a Retaliation Claim under the FLSA**

On February 1, 2021, plaintiff filed *Lucas I*, alleging two violations of the FLSA against the SBA. Plaintiff alleged that defendant violated the FLSA by: (1) "intentionally refus[ing] to pay [plaintiff] her wages" for two hours of overtime work during the government shutdown and (2) unlawfully retaliating against her for inquiring about when she would be paid. *See Lucas I*, 2022 WL 2064852, at *1. The Court granted in part and denied in part defendant's motion to dismiss, which permitted the unpaid wages claim to proceed but dismissed the retaliation claim. *See id.* at *8–9. It found that there was a genuine dispute of material fact in the record at that "early juncture" as to whether plaintiff had released her unpaid wages claim in a settlement agreement she signed with the SBA in March 2020. *Id.*

Plaintiff subsequently filed an amended complaint, which included the remaining unpaid wages claim and alleged a new retaliation claim, asserting that she was "removed from federal service" and constructively discharged for making formal and informal complaints seeking information about when she would be paid. *See Lucas I*, 2026 WL 1998749, at *1. The Court granted the SBA's motion for summary judgement, and denied plaintiff's partial motion for summary judgment. *Id.* at *2. The Court found that Count I was barred by the FLSA's two-year statute of limitations, and that the retaliation claim in Count II was barred by the Settlement Agreement because "[a]ny potential retaliation claim falls squarely within the category of claims plaintiff settled and released." *Id.* at *10, citing Settlement Agreement ¶ 11 (releasing "all other claims and liabilities whatsoever, whether known or unknown, pending or not now pending, contingent or fixed, that Complainant has had, now has or hereafter may have."). But the Court went on to find that even if it were to reach the merits of the retaliation claim, it would still fail

because plaintiff had not come forward with evidence to create a genuine dispute of fact for a jury to determine that she had been retaliated against. *Id*. at *10.

**Plaintiff Filed *Lucas II*, Alleging That the Settlement Agreement was Breached**

On July 14, 2022, plaintiff, proceeding *pro se*, filed a nine-count lawsuit against the SBA, claiming that the agency had discriminated against her and breached the Settlement Agreement. *See Lucas II*, 2024 WL 4650944, at *3. After a motion to dismiss was fully briefed, counsel entered an appearance and moved for leave to amend the complaint. *Id*. The proposed amended complaint consisted of nine counts. Counts One through Seven alleged discrimination and retaliation under Title VII and the Rehabilitation Act. Count Eight alleged that the SBA fraudulently induced plaintiff into signing the Settlement Agreement and that her release of claims was unenforceable as a matter of law. *Id*. Count Nine alleged that the SBA had breached the Settlement Agreement, in various ways, including by contesting plaintiff's worker's compensation claim through the Second Opinion letter and the letters regarding her worker's compensation claims. *Id.* at *4.

On November 1, 2024, this Court granted the motion to dismiss and denied the motion for leave to amend in *Lucas II*. *Id*. at *6. The Court found that Counts One through Seven of the proposed amended complaint had been expressly released in the Settlement Agreement. *Id*. at *4. Regarding Count Eight, the Court found that plaintiff had failed to state a claim for fraudulent inducement because she had not alleged "any false representation made by defendant in the course of negotiating the Settlement Agreement . . . nor knowledge on the part of the defendant that any representation was false and made for the purpose of inducing plaintiff to sign the Settlement Agreement." *Id.* at *5. Finally, with respect to Count Nine, the Court concluded that the SBA had not breached the settlement agreement when it requested a second opinion regarding plaintiff's

PTSD diagnosis because the inquiry "did not dispute or appeal the Department's initial decision that plaintiff was, in fact, injured on the job." *Id*. at *6.

On May 29, 2025, the Court of Appeals for the District of Columbia Circuit affirmed that ruling. *Lucas II*, No. 24-5296, 2025 WL 1539305 (D.C. Cir. May 29, 2025). The Court of Appeals held: "appellant does not dispute that in the absence of a valid claim for fraudulent inducement or breach, the settlement agreement barred the employment claims," and "appellant shows no error in the district court's conclusions that the parties' settlement agreement is unambiguous and that appellant's proposed amended complaint failed to state a claim for fraudulent inducement or breach of the settlement." *Id*. at 1.

**Plaintiff Filed This Case – *Lucas III***

On November 21, 2023, plaintiff filed this action, proceeding *pro se*. *Lucas v. Loeffler*, 23-3535 ("*Lucas III*"). Compl. [Dkt. # 1]. Counsel later entered an appearance on her behalf and filed the first amended complaint on August 7, 2024. *See* Am. Compl. The parties then briefed a motion to dismiss. *See, e.g.*, Def.'s Mot. to Dismiss [Dkt. # 18].

On April 19, 2025, plaintiff, through counsel, moved to amend the complaint again. *See* Mot. for Leave to File 2d Am. Compl. [Dkt. # 19]. The SBA declined to oppose the motion for leave to amend, deciding instead to challenge the new complaint through a motion to dismiss. *See* Def.'s Response to Pl.'s Mot. for Leave to File to Amend [Dkt. # 23]. The Court granted leave to file the second amended complaint, which is now the operative complaint and consists of six counts:

- Count One: retaliation in violation of Title VII, 2d Am. Compl. ¶¶ 152–166;
- Count Two: retaliation in violation of section 501 of the Rehabilitation Act, 2d Am. Compl. ¶¶ 167–179;

- Count Three: "conduct[ing] medical case management without legal authority" and seeking "confidential medical records under false pretenses of reemployment" in violation Section 501 of the Rehabilitation Act and Title I of the ADA, 2d Am. Compl. ¶¶ 180–189;

- Count Four: improper storage and disclosure of medical records in violation of the Rehabilitation Act, the ADA, and the Privacy Act, 2d Am. Compl. ¶¶ 190–198;

- Count Five: "retaliatory interference" in violation of Title VII and the Rehabilitation Act, 2d Am. Compl. ¶¶ 199–206;

- Count Six: constructive discharge in violation of Title VII and the Rehabilitation Act, 2d Am. Compl. ¶¶ 207-211.

She seeks compensatory damages for pain and suffering and other damages in the amount of $5,000,000. *Id.* ¶ 212. Plaintiff voluntarily dismissed the constructive discharge claim on September 2, 2025. Pl.'s Opp. at 12, n.1.

**STANDARD OF REVIEW**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A pleading must offer more than

"labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Therefore, when considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

In plaintiff's own words, this "lawsuit is about the retaliatory breach of a settlement agreement." Pl.'s Opp. at 1.[3] She distinguishes this lawsuit from the other actions she has filed as follows:

> [T]his case is not a retreading of turf that has already been litigated. This case is not about the initial disputes that [p]laintiff ostensibly released in the Settlement Agreement. This case is about [d]efendant's actions after the Settlement Agreement was executed, and how those actions were an extension of the residual animus [d]efendant harbored against [p]laintiff, despite what should have been an amicable resolution of claims.

Pl.'s Opp. at 1–2.[4]

Plaintiff alleges that the SBA took a "series of actions" that were "designed to punish" plaintiff for having filed claims against defendant and that the SBA's actions were "motivated by retaliatory animus." *Id*. at 2; 2d Am. Compl. ¶ 90 (alleging harm "that has continued after [the] execution [of the Settlement Agreement]"); 2d Am. Compl. ¶ 91 (contending that the SBA interfered with plaintiff's worker's compensation benefits under the statute).

---

3 Although plaintiff emphasizes that the central theme of this case is a retaliatory breach of the Settlement Agreement, the Court notes that plaintiff does not include an actual breach of contract claim, as she did in *Lucas II*.

4 Despite plaintiff's assertion that this lawsuit is focused on events following the execution of the Settlement Agreement in 2020, certain allegations in the complaint address pre-settlement conduct. *See, e.g.*, 2d Am. Compl. ¶¶ 153–165 (alleging in Count I, for example, that she was retaliated against for engaging in protected activity in 2017 and 2018 and that one of the materially adverse actions she experienced was the denial of a within-grade increase in January 2018). Plaintiff explains any pre-settlement allegations are simply "relevant background pertaining to her past allegations of discrimination that formed the subject of the Settlement Agreement without going into unnecessary detail regarding the substance of those claims." Pl.'s Opp. at 4. Given plaintiff's representations, the Court will treat allegations about pre-settlement conduct as relevant context in construing plaintiff's claims, but will not consider them as facts proffered in support of discrete claims.

The SBA moves to dismiss the second amended complaint on several grounds: (1) the complaint fails to state retaliation claims under Title VII and the Rehabilitation Act because plaintiff did not plausibly allege causation, administrative exhaustion, or materially adverse action;[5] (2) the "retaliatory interference" claim is duplicative of the retaliation claim; (3) the complaint fails to plead an unlawful medical inquiries claim under the Rehabilitation Act and the ADA; and (4) the complaint fails to state a claim under the Privacy Act, the ADA, and the Rehabilitation Act related to the treatment and storage of medical records. Def.'s Mot. at 11–35.

## I. The complaint fails to state claims for retaliation (Counts One, Two, and Five)

Counts One and Two allege discrete retaliation claims under Title VII and the Rehabilitation Act. 2d Am. Compl. ¶¶ 152–179. Count Five asserts a claim for "retaliatory interference" in violation of both statutes. *Id.* ¶¶ 199–206.

To plead an unlawful retaliation claim under either statute, an employee must allege that she (1) engaged in activity protected by the statute; (2) the employer took a materially adverse actions against her, and (3) that the employer took the action because of the employee's protected conduct. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012); *Bain v. Off. Of the Atty. Gen.*, No. 21-1751, 2022 WL 17904236, at *19 (D.D.C. Dec. 23, 2022) (applying the same standard for retaliation claims brought under Title VII or the Rehabilitation Act). Retaliation claims under Title VII and the Rehabilitation Act are subject to "traditional principles of but-for causation" and must allege "that the unlawful retaliation would not have occurred in the absence

5 The SBA does not appear to dispute that plaintiff engaged in statutorily protected activity when she filed her EEO complaints, filed formal grievances through the union against her employer, requested reasonable accommodations for her disability, and filed whistleblower complaints with the Office of Special Counsel in 2017 and 2018. Def.'s Mot. at 13–14.

of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Drasek v. Burwell*, 121 F. Supp. 3d 143, 162 (D.D.C. 2015).

**A. Counts One and Two only plead materially adverse actions insofar as they are based on allegations that the SBA denied plaintiff pay or altered her benefits.**

For purposes of a retaliation claim, an act is materially adverse if it objectively "would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 539 (D.C. Cir. 2024), quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008). In the retaliation context, materially adverse actions are "not limited to discriminatory actions that affects the terms and conditions of employment." *Burlington N.*, 548 U.S. 53, 64(2006).

Counts One and Two allege that plaintiff experienced the following adverse employment actions:

- Denying plaintiff a within-grade increase (WGI) in January 2018, "while similarly situated male and white employees received theirs," 2d Am. Compl. ¶ 156;

- Constructively discharging plaintiff through a "coercive settlement agreement" that barred her from future employment," *id*. ¶ 157;

- Denying plaintiff "statutorily mandated benefits," including continuation of pay (COP) and annual leave restoration, *id*. ¶ 158;

- Making "excessive and invasive medical inquiries post-employment, despite having no legitimate job-related necessity," *id*. ¶¶ 159, 174–175;

- Misclassifying her disability and interfering with her FECA benefits, *id*. ¶¶ 160, 173.

The SBA concedes that plaintiff's allegations concerning her pay, including the denial of COP payments, are assumed to be material at this stage of the litigation. Def.'s Mot. at 16. The

same conclusion is true with respect to the allegations about her benefits, including her claims that plaintiff was denied disability and worker's compensation benefits. *See Bridgeforth v. Jewell,* 721 F.3d 661, 663 (D.C. Cir. 2013).

Therefore, drawing all reasonable inferences in favor of plaintiff, as the Court must at this stage of the litigation, the Court will treat the allegations regarding pay and changes to her benefits as a plausible underpinning for the retaliation claims. [6] Because plaintiff has alleged at least one materially adverse action for both of the retaliation counts, the Court will move on the next step of the analysis – whether plaintiff has plausibly pled a causal connection between her protected activity and the complained-of actions.

---

6 Plaintiff's remaining allegations, though, are another matter. Many of these alleged events do not involve pay or a change in benefits and do not qualify as something more than ordinary trivial slights in the workplace and therefore do not a create a plausible inference that a materially adverse action occurred.

For instance, with respect to the allegations that the SBA made unnecessary medical inquiries after she was no longer employed with the agency, *see* 2d Am. Compl. ¶¶ 115–126, the Court finds that they fail to give rise to a plausible inference that plaintiff was subjected to an adverse action. Plaintiff points to the 2022 Second Opinion Letter from the SBA to the Department of Labor, asking that plaintiff be referred for an updated Psychiatric Second Opinion and providing a report of a physician's review of plaintiff's file. 2022 Second Opinion Letter at 2. But, as the Court has determined on another occasion, plaintiff's characterization of the letter as adverse cannot be squared with the letter itself, which appears to be benign and completely routine, even though plaintiff considered it to be unnecessary:

> Defendant did not agree to support plaintiff without question and in perpetuity for the injuries arising out of the March 4, 2019 incident, but only to let the Department of Labor's November 19, 2019 decision accepting her PTSD claim stand. Defendant's later inquiry into the current state of her work-related disability and the basis for ongoing payments did not "dispute" or appeal the Department's initial decision that plaintiff was, in fact, injured on the job.

*Lucas II*, 2024 WL 4650944, at *6. In other words, the SBA's request for updated information as part of its efforts to manage her benefits does not rise to the level of an adverse action that would support her retaliation claim.

**B. Counts One and Two do not plead a causal connection between the protected activity and the materially adverse events.**

The SBA argues that plaintiff has failed to plead a causal connection between her protected activity and materially adverse events. Def.'s Mot. at 13–16. In attempting to allege a causal connection between her protected activity and the SBA's actions after the Settlement Agreement was signed, plaintiff does not point to any direct evidence of retaliation. Pl.'s Opp. at 8–9. In the absence of direct evidence, a plaintiff may rely "temporal proximity," but she falls short there as well.

Temporal proximity requires a "very close" link in time between the two events: "an employer's knowledge of protected activity and an adverse employment action. *Clark Cnty Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Courts in this district have found that alleging that retaliation occurred more than three months after the employee's protected activity generally fails to state a claim. *See Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (rejecting interval of two and a half months as establishing temporal proximity and citing, with approval, cases that did not find temporal proximity when two to three months elapsed between the protected activity and adverse employment action); *Keys v. Donovan*, 37 F. Supp. 3d 368, 373 (D.D.C. 2014), quoting *Hamilton*, 666 F.3d at 1357–58 ("Although 'neither the Supreme Court not the [D.C. Circuit] has established a bright-line three month rule,' this Circuit has generally found that such a gap between the protected activity and the adverse employment action negates the temporal proximity needed to prove causation.").

In Count I, plaintiff alleges that she engaged in protected activity under Title VII "when she filed her EEO complaints in 2017 and 2018, alleging gender discrimination," *see* 2d Am. Compl. ¶ 154, as well as when she pursued formal grievances with her union and filed whistleblower complaints with the Office of Special Counsel, *id*. ¶¶ 10, 30. In Count II, plaintiff

alleges that she engaged in protected activity under the Rehabilitation Act when she requested reasonable accommodations for PTSD, including telework and medical leave, and when she filed complaints against the SBA for disability discrimination in June 2017. *Id.* ¶¶ 6–8, 168–69. All of these events occurred well before the Settlement Agreement was executed in March 2020.

Plaintiff alleges that several adverse events occurred "[i]n response" to her protected activity. *See id.* ¶¶ 155, 171. But the alleged adverse events that form the basis of the retaliation claim all occurred after the Settlement Agreement was executed in March 2020. *See* Pl.'s Opp. at 9, citing 2d Am. Compl. ¶ 53 (alleging that the "first retaliatory act" occurred when defendant failed to execute the Settlement Agreement within 45 to 60 days);[7] 2d Am. Compl. ¶¶ 103–104 (alleging that in June 2021 and January 2022, the SBA "intentionally misclassified" plaintiff's PTSD in order to invoke the "doubled-dipping" restriction, which prevents an individual from receiving FECA wage loss benefits while receiving compensation from the Department of Veterans Affairs for the same disability); *id.* ¶¶ 119–124 (alleging that between 2022 and 2024, the SBA conducted unauthorized medical case management and evaluations under the "false pretense" of determining her return-to-work status); *id.* ¶¶ 122 (alleging that the SBA, through its third-party agent Sedgwick, engaged a doctor to conduct an unauthorized medical review). In other words, the allegedly retaliatory acts challenged in Counts One and Two took place two to

7 Plaintiff does not directly address defendant's arguments regarding temporal proximity, instead implying that the Settlement Agreement is the point in time from which the causal connection between the protected activity and the adverse actions should be assessed. Pl.'s Opp. at 9. To the extent plaintiff is suggesting that the Settlement Agreement itself constituted protected activity, the Court notes that this is not the case that plaintiff has pled. 2d Am. Compl. ¶¶ 152–179 (making no reference to the execution of the Settlement Agreement as protected activity).

four years after the protected activity.[8] This does not satisfy the level of "very close" temporal proximity.

Plaintiff responds that, at the motion to dismiss stage, a conclusory allegation that she was retaliated against because of her protected activity is all that is needed. Pl.'s Opp. at 8–9, citing *Rochon v. Gonzales*, 438 F.3d 1211, 1218 (D.C. Cir. 2006), citing *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000) (alleging race discrimination under Title VII). It is true that prior to *Iqbal*, the D.C. Circuit articulated a more relaxed causation standard that required no more than an allegation that "'I was turned down for a job because of my race[.]'" *Sparrow*, 216 F.3d at 1115; *see id.* at 1114–15 (explaining that "complaints need not plead law or match facts to every element of a legal theory," or "make out a prima facie case of discrimination"). But courts in this district have concluded that *Iqbal* and *Twombly* abrogated *Sparrow*, *see Delk v. PNC Bank, N.A.*, No. 23-1365, 2024 WL 4280827, at *10 (D.D.C. Sept. 9. 2024), and that more detailed allegations are now required to plausibly allege causation.

Given that plaintiff does not allege any other evidence of causation, Counts One and Two will be dismissed.[9]

---

8 Plaintiff also alleges that the denial of her WGI in January 2018 was an adverse action. 2d Am. Compl. ¶ 156. Although this event occurred more than two years before the Settlement Agreement was executed in March 2020, plaintiff has clarified that her claims in this case "focus[] on what motivated and caused [d]efendant to take the post-settlement actions it took." Pl.'s Opp. at 2; *id*. at 4 ("Plaintiff's claims are appropriately premised on the retaliatory actions taken by [d]efendant following the execution of the Settlement Agreement in March 2020."). To the extent that plaintiff is alleging that the denial of the WGI itself was a materially adverse action that supports her retaliation claims, the Court already determined that any such claims were settled and released in the Settlement Agreement executed in March 2020. *Lucas II*, 2024 WL 4650944, at *4.

9 The SBA also contends plaintiff failed to exhaust her administrative remedies for the retaliation claims under Title VII and the Rehabilitation Act. Def.'s Mot. at 13–16.

**C. Count Five, the "retaliatory interference" claim, is duplicative of Counts One and Two and will be dismissed.**

In Count Five, plaintiff alleges a claim of "retaliatory interference" in violation of Title VII and the Rehabilitation Act. 2d Am. Compl. ¶¶ 199–206. The facts underlying this claim are nearly identical to those asserted in support of Counts One and Two. *See, e.g., id*. ¶¶ 200–201 (alleging that the SBA interfered with plaintiff's access to FECA benefits and misrepresented plaintiff's PTSD diagnosis).

---

A Title VII plaintiff must pursue and exhaust her administrative remedies in a timely fashion before filing suit in federal court. *Hamilton*, 666 F.3d at 1349; *see* 42 U.S.C. § 2000e–16(c) (requiring exhaustion under Title VII procedures); *Bain*, 648 F. Supp. 3d at 44 (noting that administrative exhaustion under the Rehabilitation Act follows the same process as Title VII). Failure to exhaust is not a jurisdictional bar, but an affirmative defense that the defendant bears the burden of proving. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

To timely exhaust administrative remedies, the plaintiff must "consult" an agency EEO Counsel within 45 days of the alleged discriminatory incident "in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a), (a)(1). Plaintiff alleges that she first contacted an EEO counselor to allege a retaliatory breach of the Settlement Agreement on February 28, 2022, and that she amended that complaint to include additional claims on March 25, 2022. *See* 2d Am. Compl. ¶¶ 143–144. The SBA argues that plaintiff failed to exhaust claims arising out of any personnel actions occurring more than forty-five days before the first date she reached out to an EEO counselor (February 28, 2022), which would be any conduct occurring before January 14, 2022. But the agency fails to point to any specific allegations of conduct that it contends plaintiff has not exhausted, even though it bears the burden of doing so. *Bowden*, 106 F.3d at 437.

For her part, plaintiff does not dispute the notion that none of the complained-of conduct occurred within the forty-five day period before February 28, 2022. She does not point to any specific allegations with dates that would establish that she exhausted her administrative remedies by February 28, 2022, or cite documents that would show what specific conduct was presented to the EEO counselor. Instead, she responds that she "continued engaging in conversations with the SBA about its retaliatory breaches" throughout February 2022, suggesting that those conversations somehow altered the time in which she had to exhaust. Pl.'s Opp. at 9, citing 2d Am. Compl. ¶¶ 140–141. Plaintiff cites to no case law or other authority that supports the contention that her ongoing conversations with the agency extended the time period she had to exhaust her claim. In light of all of those circumstances, and the ruling that plaintiff has not alleged facts to support the necessary causal connection between the protected activity and the adverse actions, the Court need not address this issue further.

Defendant argues that there is no independent cause of action known as "retaliatory interference" and that the claim should be dismissed as duplicative of Counts One and Two. Def.'s Mot. at 17. Plaintiff points to a single case from another court in this district – *Lawson v. Sessions*, 271 F. Supp. 3d 119 (D.D.C. 2017) – arguing that the case recognized a standalone claim for "retaliatory interference. Pl.'s Opp. at 11. While it is true that another court used the term "retaliatory interference" to characterize two claims in that lawsuit, a close reading of the court's analysis reveals that the claim was simply a standard retaliation claim and that the court analyzed the allegations under the normal Title VII retaliation framework. *Lawson*, 271 F. Supp. 3d at 139 (discussing the prima facie test for retaliation when referring to the "retaliatory interference claims").

"Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Sandler v. Blinken*, No. 21-2226, 2022 WL 4547557, at *7 (D.D.C. Sept. 29, 2022). Therefore, because Count Five is duplicative of Counts One and Two, it will be dismissed as well.

**II. Count Three fails to plead an unlawful medical inquiries claim.**

Count Three claims that the SBA made "unlawful medical inquiries" in violation of the Rehabilitation Act, 29 U.S.C. § 791(g), and the ADA, 42 U.S.C. § 1211(d)(3)(b), which establish federal requirements for the employment of individuals with disabilities. Plaintiff alleges that the SBA "unlawfully subjected plaintiff to medical inquiries without job-related necessity," "demanded unnecessary medical documentation," and – referring to the Second Opinion letters – directed a third-party agent (Sedgwick) to conduct medical case management without legal authority. 2d Am. Compl. ¶¶ 181–188. According to plaintiff, all of these events occurred from 2022 to 2024, well after the Settlement Agreement, pursuant to which plaintiff voluntarily resigned

from the agency, was executed in March 2020. *Id.* ¶¶ 115–126. Plaintiff characterizes the SBA's actions as "excessive, intrusive, and retaliatory." *Id.* ¶ 184.

Title I of the ADA prohibits "inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *see also id.* § 12112(d)(3) (permitted an employer to require a "medical examination" after an offer of employment has been extended "to a job applicant and prior to the commencement of the employment" under certain circumstances). The ADA's regulations also bar an "employer from "requir[ing] a medical examination of an employee or to make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability except when it is "job related and consistent with business necessity." 29 C.F.R. § 1630.13–14.

Plaintiff's allegations fail to state a claim under these provisions because the requirements do not apply to *former* employees. Rather, they address circumstances in which an individual with a disability is a prospective or active employee. *See* 42 U.S.C. § 12111(4) ("[E]mployee" means an individual employed by an employer."). Given that plaintiff was not an "employee" at the SBA after she voluntarily resigned pursuant to the Settlement Agreement in March 2020, *see* 2d Am. Compl. at 1, the allegations fail to create a plausible inference that the SBA's actions regarding her medical records during the post-employment period violated the Rehabilitation Act or the ADA.

For those reasons, Count Three will be dismissed.

### III. Count Four fails to state claim for improper storage and disclosure of medical records.

Plaintiff alleges that her medical records were improperly stored and disclosed in violation of the Rehabilitation Act, the ADA, and the Privacy Act, *see* 2d Am. Compl. ¶¶ 190–197, when the SBA "directed its third-party administrator, Sedgwick, to conduct a medical case management," in connection with the requests for a second opinion about her disability status. 2d Am. Compl. ¶ 183; *see also* 2d Am. Compl. ¶¶ 194–195 (contending that the SBA shared "private medical information" with third parties to Sedgwick and provided false information about plaintiff's disability status to federal agencies).

The Court has already explained that these allegations do not create a plausible inference that the SBA violated the Rehabilitation Act or the ADA, and nothing plaintiff cites in support of Count Four alters that conclusion. Plaintiff's claim under the Privacy Act fares no better. Under the Privacy Act, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). The Privacy Act provides agencies with "detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." *Doe v. Chao,* 540 U.S. 614, 618 (2004).

Plaintiff cites "552a" but does not tie her claim to any cause of action created by the Privacy Act. *See* 2d Am. Compl. at 29. She points to the Second Opinion letters the SBA exchanged with the Department of Labor in January 2022 and August 2024 regarding her worker's compensation benefits. *See* 2022 Second Opinion Letter (Letter from SBA to DOL dated January 31, 2022 "request[ing] this claimant be referred for an updated Psychiatric Second Opinion); 2024 Second Opinion Letter (Letter from SBA to DOL dated August 23, 2024 "request[ing]" plaintiff "be

referred for an updated Neuropsychiatry Second Opinion" because the agency "has an interest in requesting an exam in order to determine return to work capabilities"). Despite plaintiff's insistence that these letters somehow violated her privacy rights by sharing information with unauthorized recipients, the letters themselves, which are incorporated in the complaint, belie that contention. Neither letter involves a disclosure to a third-party administrator; they simply state the SBA's "request" to DOL that plaintiff "be referred" for an updated Second Opinion. *See id.*; 2022 Second Opinion Letter. Indeed, the word "Sedgwick" – the alleged recipient of the improper disclosure – does not appear anywhere in either letter. To the extent that plaintiff contends that the inclusion of the physician's report attached to both letters was itself an improper disclosure, there is also no indication from the face of the documents that the report was provided to a third party administrator, and even if it were, that the SBA was responsible for any such transmission. Because these allegations do not provide a plausible basis for the Court to determine that the Privacy Act has been violated as alleged, Count Four will be dismissed.

**CONCLUSION**

For the reasons set forth above, defendant's motion to dismiss the complaint is **GRANTED**.

A separate order will issue.

Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: September 28, 2026